Filed 8/5/22 P. v. Rincon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H048331 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. Nos. SS170304B, SS170575A) |
| v. | |
| MIGUEL RINCON, | |
| Defendant and Appellant. | |

In May 2018, after being restored to competency at a state hospital, defendant Miguel Rincon pleaded no contest in two separate cases to second degree robbery (Pen. Code, § 211)[1] and second degree commercial burglary (§ 459). The trial court suspended imposition of sentence and granted Rincon three years of probation with various terms and conditions. In 2019, Rincon violated his probation terms on two separate occasions. After the first violation, the trial court reinstated probation. After the second violation, the trial court terminated probation and sentenced him to three years eight months in state prison.

Rincon appeals, arguing that the trial court abused its discretion by terminating his probation and by not considering his suitability for mental health diversion. The Attorney General concedes that Rincon is entitled to a conditional limited remand for the trial court to consider his eligibility for mental health diversion, but maintains that the trial court did not abuse its discretion in terminating probation. Rincon also contends that

---

[1] Unspecified statutory references are to the Penal Code.

he is entitled to conduct credits for his commitment time at the state hospital and that the denial of conduct credits violates equal protection. The Attorney General disagrees.

We conclude that Rincon is entitled to a conditional limited remand for consideration of his suitability for mental health diversion. We also determine that he is not entitled to additional conduct credits for his time in a state hospital, nor did the trial court abuse its discretion in terminating probation. We reverse and remand with directions.

### I. Background

In February 2017, the Monterey County District Attorney's Office filed a felony complaint in case No. SS170304B, charging Rincon with second degree robbery (count 1; § 211); second degree commercial burglary (count 2; § 459); and criminal threats (count 3; § 422). In April 2017, another felony complaint was filed in case No. SS170575A, charging Rincon with second degree robbery (count 1; § 211), with an allegation that he committed the offense while released on bail or his own recognizance in case No. SS170304B (§ 12022.1, subd. (b)). The complaint was later amended to add a charge of second degree commercial burglary (count 2; § 459), again with an allegation that he committed the offense while released on bail or his own recognizance (§ 12022.1, subd. (b)).

In August 2017, during a preliminary hearing, defense counsel expressed doubt as to Rincon's competence. The trial court found that a doubt had arisen as to Rincon's mental competence, referred him for examination pursuant to section 1368, and suspended the proceedings. The examiner later determined that Rincon was not currently competent to stand trial. Rincon was committed to Metropolitan State Hospital on November 9, 2017, and admitted there on February 21, 2018. On April 17, 2018, the medical director of Metropolitan State Hospital filed a certificate of restoration to competence pursuant to section 1372, and on April 26, 2018, the trial court held a hearing

2

on Rincon's restoration. The court found Rincon competent to stand trial and criminal proceedings resumed that day.

On May 29, 2018, Rincon agreed to plead no contest to one count of second degree robbery in case No. SS170304B, and one count of second degree commercial robbery in case No. SS170575A. He did so on the condition that he would be granted probation. On June 28, 2018, the trial court suspended imposition of sentence, and in accord with the plea agreement, granted Rincon three years of probation with various terms and conditions, including some related to mental health treatment. Rincon was given credit for 165 days of actual time served in county jail and an additional 100 days of conduct credits, for a total credit of 265 days.

In July 2019, the probation department filed a petition alleging that Rincon violated his probation after he was cited for engaging in a motor vehicle exhibition of speed on a highway (Veh. Code, § 23109, subd. (c)). At a hearing, Rincon admitted to violating an amended infraction of driving in an improper lane (Veh. Code, § 22348, subd. (c)) and his probation was reinstated by the trial court.

In August 2019, the probation department filed a second petition alleging that Rincon failed to abstain from alcohol. The petition alleged that Rincon had been arrested for driving under the influence of alcohol and having a blood alcohol content of 0.08 percent or more (Veh. Code, § 23152, subds. (a), (b)) after a single-vehicle crash. Tests found a blood alcohol content of 0.180 and 0.189 percent. The trial court conducted a hearing and found the probation violation allegations to be true.

On June 18, 2020, the trial court held a sentencing hearing. The prosecutor argued that "the underlying circumstances of both cases in this matter were extremely aggravated," involving "threats" and "possible violence" against the victims. The prosecutor contended that a sentence of five years eight months—the maximum permitted by law—was warranted. Defense counsel argued that the court should instead reinstate and extend probation with additional conditions. He noted Rincon's "youth,"

3

"his lack of prior record, [and] the fact that he is suffering from significant mental health issues at the time of the commission of both crimes." Defense counsel also elaborated on Rincon's struggle with mental health issues during and since his treatment at the state hospital. He stated that the diagnosis had "evolved from schizophrenia to schizoaffective disorder." In addition, defense counsel asserted that the probation violations occurred during a period of being symptomatic, but since then an adjustment had been made to Rincon's treatment plan and "that [has] actually work[ed] well for him."

At the conclusion of the hearing, the trial court terminated Rincon's probation in both cases and imposed a sentence of three years in prison in case No. SS170304B and a consecutive sentence of eight months in case No. SS170575A. After the pronouncement of sentence, defense counsel argued that Rincon should receive presentence conduct credits for the period of time spent in treatment at the state hospital. Stating it was bound by *People v. Waterman* (1986) 42 Cal.3d 565, the court denied the request.

## II. Discussion

### A. Mental Health Diversion

Rincon argues that the trial court abused its discretion when it did not consider his suitability for mental health diversion under section 1001.36. Alternatively, he contends that his trial counsel was prejudicially ineffective for not attempting to withdraw his plea and seek mental health diversion. The Attorney General concedes that "despite [Rincon's] failure to preserve the mental health diversion claim on appeal, the particular circumstances here warrant a discretionary review of the diversion issue." He notes that "the record affirmatively discloses that [Rincon] appears to meet at least one of the threshold eligibility requirements for mental health diversion, necessitating a conditional limited remand for a section 1001.36 eligibility hearing." As explained below, we agree that a conditional remand is warranted.

Effective June 27, 2018, the Legislature enacted sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health

4

disorders. (Stats. 2018, ch. 34, § 24.) Section 1001.36 provides that a trial court may grant pretrial mental health diversion if it finds that the defendant is eligible because, among other factors, the defendant suffers from a qualifying mental disorder, the disorder played a significant role in the commission of the charged offense, and the defendant's symptoms will respond to mental health treatment. (§ 1001.36, subd. (b)(1)(A)-(F); *People v. Frahs* (2020) 9 Cal.5th 618, 626-627 (*Frahs*).) It defines "pretrial diversion" to "mean[] the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged *until adjudication*, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c), italics added.) The maximum period of diversion is two years, and if the defendant performs satisfactorily in diversion, the trial court must dismiss the criminal charges that were the subject of the criminal proceedings at the time of the initial diversion. (§ 1001.36, subds. (c)(3), (e).)

Here, Rincon pleaded no contest in both of his cases on May 29, 2018, prior to the enactment of section 1001.36, which became effective June 27, 2018. On June 28, 2018, one day after section 1001.36's effective date, Rincon was sentenced to three years of probation with conditions pertaining to mental health treatment. The Attorney General contends that this case is governed by *Frahs*.

*Frahs* involved the question of whether section 1001.36 relief was available to a defendant whose convictions were still under direct appellate review when the statute became effective. Resolution of this question "turned on whether the Legislature, in enacting section 1001.36, had ' "clearly signal[ed] its intent" ' to overcome the presumption of *In re Estrada* (1965) 63 Cal.2d 740, that statutes having an ameliorative effect in criminal cases apply retroactively to convictions that are not yet final." (*People v. Graham* (2021) 64 Cal.App.5th 827, 834, review granted Sept. 1, 2021, S269509, (*Graham*).) "*Frahs* ruled that the ' "until adjudication" ' language in section 1001.36 did not constitute that 'clear' signaling [citation], such that defendants whose convictions

5

were in the 'pipeline' of direct appellate review when section 1001.36 took effect could still take advantage of the statute. But *Frahs* was careful to limit its analysis to the availability of section 1001.36 to these pipeline defendants, and to note that its holding involved a 'quite different' question from how the 'statute normally will apply going forward' as to the defendants who had had the opportunity [to] seek pretrial diversion from the very beginning." (*Ibid*.)

Here, Rincon pleaded no contest before section 1001.36's effective date, and therefore did not have the opportunity to seek pretrial diversion from the very beginning. Although the mental health diversion statute had been in effect for one day when Rincon was sentenced, there is nothing in the record to indicate that the parties or the trial court were aware of the newly-enacted statute.[2] Thus, because Rincon pleaded no contest before the enactment of section 1001.36 and was apparently sentenced without consideration of the statute, we accept the Attorney General's concession that Rincon's case is controlled by *Frahs*. In *Frahs*, the court determined "that a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when . . . the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Frahs*, *supra*, 9 Cal.5th at p. 640.)

---

[2] Nor would it have been clear if *pretrial* mental health diversion was even available to Rincon at the time of sentencing. Since *Frahs* was decided, courts have come to three different interpretations of the meaning of the phrase "until adjudication" in section 1001.36. Under the first, the time of adjudication is the time that guilt is found. (*Graham*, *supra*, 64 Cal.App.5th at p. 833 ["a request for 'pretrial diversion' under section 1001.36 is timely only if it is made prior to the jury's guilty verdict"], review granted Sept. 1, 2021, S269509.) Under the second, "a defendant is ineligible for diversion under section 1001.36 after his trial begins." (*People v. Braden* (2021) 63 Cal.App.5th 330, 333, review granted July 14, 2021, S268925.) Under the third, a defendant may request diversion up to and until the time of sentencing. (*People v. Curry* (2021) 62 Cal.App.5th 314, 321 ["section 1001.36 contemplates mental health diversion until entry of the judgment of conviction"], review granted July 14, 2021, S267394.)

6

We conclude that the record in this case affirmatively discloses that Rincon appears to meet the first threshold eligibility requirement for mental health diversion under section 1001.36, subdivision (b)(1)(A). During sentencing, defense counsel stated that Rincon had been diagnosed with schizoaffective disorder, which is a qualifying mental disorder under section 1001.36. (See § 1001.36, subd. (b)(1)(A) [listing qualifying mental disorders, including "but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder"].) Further, although Rincon's present appeal is not from the underlying order suspending imposition of sentence and granting probation, he is entitled to take advantage of the mental health diversion statute in this appeal from the judgment revoking probation because the statute is an ameliorative statutory amendment. (*People v. McKenzie* (2020) 9 Cal.5th 40, 43, 51-52.) Accordingly, Rincon is entitled to a conditional limited remand to consider his eligibility for diversion under section 1001.36.[3]

## B. Termination of Probation

Rincon argues that the trial court abused its discretion when it terminated his probation and sentenced him to state prison. The Attorney General argues that Rincon's challenge has been waived by his failure to object, and that the claim necessarily fails on the merits.

### 1. Background

On July 23, 2019, Rincon admitted to a Vehicle Code violation and his probation was reinstated. The prosecutor emphasized to Rincon "that [if there were] any further violations, the People would . . . strongly argu[e] for a prison sentence." The prosecutor

---

[3] Because we find Rincon is entitled to a conditional remand, we do not address his claim that trial counsel was ineffective for not seeking mental health diversion at the probation revocation hearing or that the trial court erred by not considering his suitability for mental health diversion.

stated, "I do want the Court to be aware of how serious the priors are. My issue with this is, to me, this should have been a prison case from the start."

After the trial court reinstated probation, the court admonished Rincon: "Now, you've been given an opportunity to avoid having to serve a sentence in state prison based on your admission of a Vehicle Code violation that you've agreed to acknowledge responsibility for having committed out there on the street. Okay? [¶] So you need to understand something: With respect to those underlying charges, that was serious conduct that you engaged in. You're looking at five years, eight months to be served in state prison. By violating the terms and conditions of probation you're not performing in a satisfactory manner. [¶] Do you understand that?" Rincon answered, "Yes." The court then asked, "Do you understand what happens when you violate the terms and conditions of probation?" Rincon again answered, "Yes."

Six days later, on July 29, 2019, Rincon was arrested for driving under the influence of alcohol after being involved in a single-vehicle crash. Rincon's blood alcohol content was tested at 0.189 percent and 0.180 percent. A probation violation petition was filed, and after a hearing, the trial court found the probation violation allegations to be true. The court revoked probation in both underlying cases and set the matters for sentencing.

The prosecution filed a sentencing memorandum requesting that Rincon be sentenced to five years eight months in prison, the maximum permitted by law. Defense counsel also filed a sentencing memorandum, along with numerous attachments relating to Rincon's mental health and treatment. Defense counsel argued for the court to reinstate probation with additional conditions focused on mental health treatment and supervision. In the alternative, he requested that the court exercise its discretion to impose the lowest term of imprisonment allowed by law.

At the June 18, 2020 sentencing hearing, the trial court stated it had reviewed the probation reports in this case and the underlying cases, the prosecution's sentencing

8

memorandum, and Rincon's sentencing memorandum including his statements in mitigation. After hearing argument on the matter, the trial court noted that Rincon had previously been warned that "a prison commitment could be the sentencing outcome if he violated probation again. [¶] The [defendant] committed the instant violation on July 29th of 2019, six days after the sentencing hearing. . . . [¶] The [defendant's] recklessness pose[s] a danger to the community and he failed to heed the Court's warning. [¶] Further, this was his second violation in a very short period of time." The court went on to discuss the aggravated nature of the underlying robbery and commercial burglary. The court concluded that "[p]robation is no longer a viable sentencing option, given that this gentleman's performance on probation is not satisfactory." The court imposed the middle term of three years in case No. SS170304B, and one-third the middle term of eight months in case No. SS170575A.

## 2. Standard of Review

A trial court has broad discretion in criminal sentencing, including the treatment of probation violations. (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421.) On proof of a violation, the court may either reinstate probation on the same terms, reinstate it with modified terms, or terminate it and sentence the defendant to state prison. (*Ibid*.) When deciding whether to terminate probation, the trial court should "consider the nature of the violation and the defendant's past performance on supervision." (Cal. Rules of Court, rule 4.435(a).) It should also consider what the defendant's performance "portend[s] for future conduct" and whether they "can conform [their] behavior to the parameters of the law." (*People v. Beaudrie* (1983) 147 Cal.App.3d 686, 691.) We review a decision to terminate probation for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*).)

"The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public

9

interest.' " (*Sandoval, supra*, 41 Cal.4th at p. 847.) "[A] trial court . . . abuse[s] its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid*.) It likewise constitutes an abuse of discretion when a court makes a decision unaware of the discretion it has. (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.) But a defendant attacking a sentence on appeal has the burden to affirmatively demonstrate the trial court misunderstood its discretion or otherwise abused it. (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.) Absent such a showing, we presume the trial court fully understood the scope of its discretion and acted in conformity with the law. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.)

### 3. The Trial Court Did Not Abuse Its Discretion When It Terminated Probation and Sentenced Rincon to State Prison

Preliminarily, we agree with the Attorney General that Rincon has forfeited the issue. On appeal, Rincon argues that the trial court abused its discretion by not appropriately exercising it in light of all of the facts. He asserts that the court failed to consider whether "any circumstances mitigate [his] conduct and whether reinstatement of probation or termination and imprisonment [was] the proper disposition." However, no such objection was made in the trial, nor was there any argument made suggesting that the court predetermined the outcome. Had such an objection been raised, the trial court could have explained in more detail its considerations in exercising its discretion. Depriving the trial court of that opportunity forfeits the claim on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 356 ["[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"].) We will nonetheless exercise our discretion to consider this issue on its merits because it is a claim of sentencing error that implicates Rincon's substantial rights. (See *People v. Anderson* (2020) 9 Cal.5th 946, 961-963.)

Here, the trial court did not abuse its discretion in terminating probation and sentencing Rincon to state prison. Rincon's argument on appeal rests on the assertion that the trial court failed to give due consideration to his "mental illness . . . and his family's efforts toward treatment and rehabilitation," and to the possibility of reinstating probation with additional conditions. The trial court, however, explained that it had read and considered the arguments of defense counsel, including the same arguments in mitigation that Rincon now makes on appeal. There is nothing in the record to demonstrate that the trial court was unaware of its discretion to reinstate probation, that the court misunderstood its discretion, or that the court otherwise relied on improper factors. Indeed, the court noted that Rincon had been warned that "a prison commitment *could* be the sentencing outcome" if he violated the terms of his probation again. (Italics added.) The court was not "required to set out its reasons for either rejecting or minimizing" the mitigating factors asserted in the briefs and argument. (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1637.)

In addition, the nature of the violations demonstrated increasingly dangerous conduct, which justified the trial court's decision. Rincon's second violation involved driving while under the influence of alcohol with a measured blood alcohol content of at least 0.180 percent. This resulted in a single-vehicle crash. And it occurred shortly after Rincon's first violation and continuation of probation. "The role of the trial court at a probation revocation hearing is" to determine "whether [the probationer] can be safely allowed to remain in society." (*People v. Monette* (1994) 25 Cal.App.4th 1572, 1575.) Rincon's failure to comply with the terms of his probation supported the trial court's conclusion that Rincon was no longer a suitable candidate for probation. (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1316.) In sum, the trial court acted well within its discretion in terminating Rincon's probation and sentencing him to state prison.

11

### C. Conduct Credits

Rincon contends he is entitled to conduct credits for the time that he spent being restored to competency at Metropolitan State Hospital. He argues that the denial of conduct credits violated his federal and state equal protection rights. In a supplemental brief filed after the passage of recently enacted Senate Bill No. 317 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 599, §§ 1-5) (Senate Bill 317), Rincon argues that he is entitled to retroactive application of the law, which extended the conduct credit provisions of section 4019 to those receiving competency treatment in state hospitals. The Attorney General contends that Rincon's conduct credits claim is not cognizable on appeal because it falls within the scope of his valid appellate waiver, and his failure to obtain a certificate of probable cause requires dismissal of the claim. He also argues that in any case the claim fails on the merits. In a supplemental brief, the Attorney General argues that Senate Bill 317 should not be retroactively applied.

### 1. Statutory Background

"Section 4019 provides defendants held in local custody or other specified settings prior to sentencing 'the opportunity to earn "conduct credit" against their sentences for good behavior. Conduct credits encourage prisoners to conform to prison regulations, to refrain from criminal and assaultive conduct, and to participate in work and other rehabilitative activities.' [Citation.] Section 4019 'specifies multiple categories of detainees who are eligible to earn such credits.' " (*People v. Orellana* (2022) 74 Cal.App.5th 319, 332 (*Orellana*).)

Effective January 1, 2019, Senate Bill No. 1187 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1008, §§ 1-6) (Senate Bill 1187) extended the conduct credit provisions in section 4019 to pretrial detainees undergoing treatment for restoration to competence. The statute amended sections 1375.5 and 4019 to authorize conduct credits for persons receiving treatment in county jail facilities. As amended, section 1375.5, subdivision (c) states that "[a] person subject to this chapter shall receive credits pursuant to

Section 4019 for all time during which he or she is confined in a county jail and for which he or she is otherwise eligible."

In October 2021, while this appeal was pending, the Legislature passed and the Governor signed Senate Bill 317. Effective January 1, 2022, Senate Bill 317 further amended section 4019 to expand eligibility for presentence conduct credit "[w]hen a prisoner is confined in or committed to *a state hospital* or other mental health treatment facility, *or to a county jail treatment facility*, as defined in Section 1369.1, in proceedings pursuant to Chapter 6 (commencing with Section 1367) of Title 10 of Part 2." (§ 4019, subd. (a)(8), italics added.)

## 2. Rincon Is Not Entitled to Additional Conduct Credits

### a. Appellate Waiver

The Attorney General contends that Rincon's conduct credits claim is not cognizable because the plea agreement waived the right to appeal on this ground. We conclude that the claim is cognizable.

Effective January 1, 2020, the Legislature enacted section 1016.8, which declares a plea "is not knowing and intelligent" if the bargain requires a defendant to generally waive unknown future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may occur after the date of the plea. (§ 1016.8, subd. (a)(4).) Under this new law, "[a] provision of a plea bargain that requires a defendant to generally waive future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is void as against public policy." (*Id.*, subd. (b); *People v. Barton* (2020) 52 Cal.App.5th 1145, 1152.) Rincon pleaded no contest in May 2018 and was sentenced in June 2018. In arguing he should receive additional conduct credits, he primarily relies on statutes that became effective in 2019 and 2021. Accordingly, under section 1016.8,

13

subdivisions (a)(4) and (b), the appellate waiver does not preclude his challenge to the conduct credits awarded.

### b. Retroactive Application under *Estrada*

Rincon argues that under *Estrada*, Senate Bill 317 applies retroactively to permit additional conduct credits for his time at a state hospital. We disagree.

A statute is ordinarily presumed to operate prospectively. (*People v. Brown* (2012) 54 Cal.4th 314, 323-324 (*Brown*).) Under *Estrada*, it is presumed as a matter of legislative intent that an ameliorative criminal statute applies retroactively to all defendants whose convictions were not yet final when the law became effective. (*People v. Esquivel* (2021) 11 Cal.5th 671, 680.) Thus, where a statutory amendment mitigates or lessens punishment and there is no apparent intent that it operate prospectively only, "the amendment will operate retroactively so that the lighter punishment is imposed." (*In re Estrada*, *supra*, 63 Cal.2d at p. 748.)

We conclude that the retroactivity rule of *Estrada* does not apply to Senate Bill 317 because "the statutory amendment does not mitigate or lessen the penalty for a particular crime or offense but rather facilitates the accrual of conduct credits by extending section 4019 to a group previously excluded from its provisions." (*Orellana*, *supra*, 74 Cal.App.5th at p. 336.) Senate Bill 317 does so by providing "behavioral incentives to detainees to affect their *future* behavior." (*Id*. at p. 337.) "[T]he legislative histories of Senate Bill 1187 and Senate Bill 317 demonstrate that the intent of both statutes was to provide individuals undergoing restoration to competence the same good conduct incentives afforded to other detainees." (*Id*. at p. 338.) "[T]he language of Senate Bill 317 and relevant legislative history provide no indication of retroactive intent." (*Id*. at p. 336.) Because Senate Bill 317's amendment to section 4019 addresses forward-looking conduct incentives, we do not presume the Legislature intended the

amendment to apply retroactively and therefore *Estrada* does not apply. (*Orellana*, *supra*, at p. 336.)

### c. Equal Protection

Rincon also argues that state and federal equal protection principles entitle him to additional conduct credits. He contends that Senate Bill 317 strengthens his equal protection claim, as it confirms "[t]here is no compelling state interest, or even rational basis, for treating him differently as to his total term of confinement because of his differing treatment needs or because these treatments are delivered to him in a different type of facility." We again disagree.

" 'The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally.' [Citation.] ' " '[T]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' " [Citation.] "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " ' " (*Orellana*, *supra*, 74 Cal.App.5th at p. 339.)

Here, we conclude that Rincon's equal protection claim fails because he is not similarly situated to individuals who may benefit from the provisions in Senate Bills 1187 and 317. Consistent with our high court's construction of section 4019 in *Brown*, *supra*, 54 Cal.4th 314, the purpose of the amendments to section 4019 " ' "is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison." [Citation.] "[T]his incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application." ' " (*Orellana*, *supra*, 74 Cal.App.5th at pp. 341-342.) Thus, Rincon is not similarly situated to inmates who are actually subject to the new provisions, because the very nature of conduct credits is directed at incentivizing future conduct.

We recognize that Rincon frames his equal protection claim differently. As in *Orellana*, Rincon frames his equal protection argument "not on any temporal distinction between defendants who received competency treatment in state hospitals prior to and after the passage of legislation extending conduct credits to that group, but instead on the purported absence of any rational basis for distinguishing between defendants whose treatment for restoration to competence takes place in county jails versus state hospitals." (*Orellana*, *supra*, 74 Cal.App.5th at p. 340.) But "[u]nder *Brown*, entitlement to conduct credits is directed at '*future conduct* in a custodial setting' [citation] and effectively precludes the court from deeming two groups similarly situated for purposes of earning conduct credits when the time in custody preceded the availability of incentive based credits." (*Id.* at p. 341.) Thus, "the Supreme Court's articulation in *Brown* of the operation of section 4019 conduct credits as an incentive to promote good conduct in custody is determinative here." (*Ibid.*) In addition, there is "nothing in the text of Senate Bill 317 or Senate Bill 1187 or the relevant legislative history that suggests the Legislature rejected the forward-looking nature of the incentive structure of section 4019 articulated by the Supreme Court in *Brown*." (*Ibid.*) Because Rincon is not similarly situated to inmates to whom Senate Bills 1187 and 317 apply, denial of conduct credits to him does not violate his equal protection rights under the federal and California Constitutions. (*Id.* at p. 342.)

## III. Disposition

We conditionally reverse the judgment and remand to the trial court for an eligibility determination under Penal Code section 1001.36. If the trial court finds that Rincon suffers from a qualifying mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the relevant statutory criteria in Penal Code section 1001.36, the court may grant him diversion. If Rincon successfully completes diversion, the court shall dismiss the charges and allegations against him. However, if the court declines to grant Rincon diversion under Penal Code section 1001.36, or if he

16

does not successfully complete diversion, the court shall reinstate Rincon's convictions and resentence him.

_____
                        Wilson, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.


_____
                Danner, J.

People v. Rincon
H048331